UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 1:12-CR-92 |
| | ) | Mattice/Carter |
| RANDY PARKS SWEENEY | ) | |

REPORT AND RECOMMENDATION

I. Introduction

This matter comes before the undersigned for a second time on a motion to suppress evidence [Doc. 44]. In the first motion, [Doc. 17], defendant unsuccessfully sought suppression of evidence found in his home on the ground that the information supporting probable cause in the affidavit used to procure the search warrant was stale.

In the instant motion, defendant seeks suppression on two primary bases: first, that the affiant, with intentional or reckless disregard for the truth, omitted a material fact from the affidavit which, if it had been included, would have negated probable cause to search defendant's home, and second, that all statements defendant made at the police station following his arrest should be suppressed as fruit of the poisonous tree because his arrest warrant was unsupported by probable cause.

This motion has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) &(C) for a report and recommendation. Upon review of this motion, the undersigned has concluded that even if the omitted material had been included in the affidavit, probable cause would not have been negated, and further, defendant's arrest comported with Fourth Amendment standards. Therefore, it is RECOMMENDED defendant's motion to suppress be DENIED.

1

## II. Facts

### A. The Tennessee Search Warrant

On February 8, 2012, Detective Josh Creel of the East Ridge, Tennessee Police Department obtained a search warrant from a General Sessions Judge of Hamilton County, Tennessee to search defendant's residence in East Ridge for electronic forms of child pornography. In support of his application for a search warrant, Det. Creel submitted his affidavit which expressly relied on a December 27, 2011, incident report prepared by Det. Tammy Davis of the Fort Oglethorpe, Georgia Police Department (the Incident Report). The Incident Report, as noted by Det. Creel's affidavit, provided the following information: (1) defendant exchanged sexually explicit messages with a 13 year old girl on Facebook, (2) defendant had met the girl in person a short time before he began communicating with her on Facebook, (3) defendant requested in these messages that the child perform sexual acts and send nude photos of the child to him via email, (4) these messages were preserved on a flash drive by Det. Davis as evidence, (5) the Facebook account responsible for sending such messages had a user name of Randy Sweeney, (6) a photograph of Randy Sweeney on this same Facebook account matches the driver's license photo of the defendant.

On February 7, 2012, Detective Tammy Davis "filed for an arrest warrant for the person of Randy P. Sweeney in Catoosa County, GA for one count of Computer Pornography as defined by OCGA 16-12-100, a violation of Georgia State Law." (Creel Aff. Page ID # 166). Det. Creel further states in his affidavit that,

> My training and experience, as well as the current literature substantiates that information collected via computer transaction, even if deleted by the individual user, usually remains stored in some manner on that computer. This same experience, training and literature substantiates that individuals collecting and/or exchanging this type of information, whether it be digital images or other pornographic materials, tend to retain this information for long periods of time, treating these items much like other collectibles.

2

(Det. Creel's Affidavit at &7, Doc. 19-1, Page ID # 51).

In addition to child pornography, the affidavit detailed other types of evidence sought in various electronic forms including "E-Mail, Immediate Messages, Text Messages, and photographic messages or other communications sent, received or retained or used in violation of O.C.G.A., 16-12-100, 16-6-4 and/or 16-6-5." (Creel Aff. at p. 2, ¶7, Page ID # 12).

Fort Oglethorpe Det. Tammy Davis' Incident Report dated December 29, 2011, which was referenced in Det. Creel's search warrant affidavit, specifically states that "although the offender [defendant] requested photographs of [the victim, she] did not provide them to him." (Davis Report, Page ID # 171). This information, *i.e.,* that the victim did not send photographs to the defendant, was not included in Creel's search warrant affidavit.

The search warrant was executed on February 8, 2012, the same date it was issued, and numerous items were seized including firearms and ammunition, cell phones, electronic media storage, and computers.

B. The Georgia Arrest Warrant, Execution of the Search Warrant, and Defendant's Subsequent Arrest

The undersigned held an evidentiary hearing on February 25, 2014 to address the question of whether defendant's arrest on February 8, 2012, met constitutional muster and, if not, whether his subsequent statements should be suppressed. As previously mentioned, prior to the search warrant being issued, Det. Tammy Davis of the Fort Oglethorpe Police Department obtained an arrest warrant from the Catoosa County, Georgia magistrate judge. The affidavit used to obtain the warrant was typed on the same page as the arrest warrant and prepared by the Catoosa County magistrate. The affidavit itself is about a half a page in length, including the

3

signature line (hereinafter referred to as "the Arrest Warrant Affidavit"), and it states that Det. Davis believed defendant committed the offense of computer pornography

> in said County between the hours of 12 AM and 11:59 PM, on the 29th day of December, 2011. The place of occurrence of said offense being …… ROSSVILLE, GA 30741 (CATOOSA COUNTY) and against the Laws of the State of Georgia. Said offense being described as
>
> [Count 1] 16-12-100.2(c)(2) – COMPUTER PORNOGRAPHY
> DID INTENTIONALLY AND WILLFULLY UTILIZE A COMPUTER (TO ATTEMPT TO) SEDUCE/SOLICIT/LURE/OR ENTICE A (CHILD/ANOTHER PERSON BELIEVED BY THE DEFENDANT TO BE A CHILD) TO COMMIT AN ACT OF CHILD MOLESTATION.

(Davis Aff., Doc. 44-4, Page ID # 154).[1]

It is uncontested that if the half page Arrest Warrant Affidavit was the only information the magistrate was supplied for the issuance of the defendant's arrest warrant, then the warrant was unsupported by probable cause. However, the evidence at the February 25, 2014 hearing indicated the Catoosa County magistrate also relied upon Det. Davis' Incident Report when he issued the arrest warrant.

Det. Davis testified in the February 25, 2014, evidentiary hearing that the accepted practice, one she has used many times, in Catoosa County, Georgia to obtain a warrant is to fax a copy of an incident report which contains the details of the suspected crime to the magistrate who then attaches it to the warrant affidavit; the magistrate then has the officer swear to the truth of the affidavit and the attached incident report. Det. Davis testified she followed this same practice to obtain the arrest warrant for defendant: before she went to the magistrate's office to obtain the arrest warrant, she faxed to the magistrate a complete copy of her Incident Report.

---

[1] While the copy of the arrest affidavit and arrest warrant which was filed as an exhibit in the court record, *see* Doc. 44-1, was not signed by either the affiant, Det. Davis, or the Catoosa County magistrate, Det. Davis brought the originals with her to the February 25, 2014 hearing, and these were signed by her (the affidavit) and by the magistrate (the arrest warrant). *See* Defense Ex. 1.

4

She then went to the magistrate's office where the magistrate asked her to swear, under oath, that the information she had provided to the magistrate was true. After she made such an oath, the magistrate signed and gave her the arrest warrant for defendant. Det. Davis further testified that while she did not examine the papers the magistrate was holding when he asked her to swear to the truth of the information she had provided him, based on prior practice, she believed and still believes that the papers he was holding included her Incident Report.

Det. Josh Creel also testified at the February 25, 2014 evidentiary hearing. He executed the search warrant for defendant's residence in East Ridge, Tennessee on February 8, 2012. Prior to executing the search warrant, Det. Creel checked defendant's criminal history which included at least one felony conviction and looked at defendant's Facebook account where he saw pictures of guns defendant was advertising for sale. Det. Creel also verified pursuant to the National Crime Information Center (NCIC) records that the Georgia warrant for defendant's arrest was still valid.

Det. Scroggins of the Rossville, Georgia Police Department and Det. Tammy Davis assisted Det. Creel with the search. Defendant's mother and wife were present. In the defendant's bedroom, Creel saw in plain view a shotgun leaning against the wall and peaking up from behind the low headboard of the bed. Creel believed with almost 100 % certainty that the barrel of the shotgun had been altered and was shorter than required by Tennessee law.[2] Upon questioning, defendant's wife told Creel the shotgun belonged to the defendant. While searching defendant's bedroom for items such as flash drives and hard drives, police found a .22 rifle which had been modified into a pistol in violation of Tennessee law and a Colt pistol.

---

[2] In fact, Creel was correct. When he measured the barrel at the police station later that day, he discovered it was 14 inches long instead of the required 18 inches.

5

About 20 minutes into the search, defendant arrived at the residence. Creel testified he arrested defendant on the Georgia arrest warrant for computer pornography involving a minor. Creel also testified, however, that if he had not had the Georgia arrest warrant for defendant, he would have arrested defendant at that time on gun charges for possession of an illegally sawed-off shotgun and an illegally modified rifle, and for illegal possession by a felon of a firearm. During the search, which took a long time because defendant's bedroom was so cluttered, the officers also collected numerous electronic items.

Upon completion of the search, defendant was transported to the East Ridge Police station and placed in an interrogation room where he was interviewed by Detectives Davis and Scroggins. Det. Davis testified she heard Det. Scroggins give defendant his *Miranda* rights prior to the initiation of questioning, that defendant appeared to understand them, and that he orally waived them. She also testified that the tone between the officers and defendant was polite and that no promises or threats were made to induce defendant to waive his *Miranda* rights. After Davis and Scroggins questioned defendant for about 20 minutes, Det. Creel, who had been logging in the evidence found at defendant's residence, came to the interview room to discuss with defendant the firearms found in his residence. At no time did defendant revoke his consent to talk to police. After speaking with defendant, Det. Creel prepared an affidavit of complaint for defendant's arrest on the firearm charges, and defendant was arrested on those charges at 5 or 6 pm.

### III. Analysis

Defendant raises two main arguments in his motion to suppress: first, that Det. Creel, intentionally or with reckless disregard for the truth, made a material omission of fact in his affidavit which, if included, would have negated probable cause to search his house, and second,

statements made by plaintiff following his arrest on the Georgia warrant must be suppressed as fruit of the poisonous tree because the Georgia arrest warrant was not supported by probable cause. The undersigned will address each argument in turn.

A. The Tennessee Search Warrant and the Alleged Material Omission of Fact

As previously stated, defendant contends Det. Creel, intentionally or with reckless disregard for the truth, omitted the material fact that the victim in this instance never sent photographs to the defendant. Defendant has offered support for this assertion by observing that (1) Det. Tammy Davis' incident report states no photographs were sent, (2) Det. Creel references Davis' report extensively in his search warrant affidavit, and (3) the reasonable inference is that Creel knew no photographs had been sent to defendant because he had read Det. Davis' report. Defendant further argues that had Creel included this fact in his affidavit, probable cause would have been lacking to issue the search warrant for defendant's residence.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978) established the procedure by which a defendant could seek the suppression of evidence by challenging the veracity of statements made by an affiant in order to secure a search warrant. "Counsel can attack the validity of a search warrant by alleging that the affidavit contains deliberately false statements." *United States v. Hill*, 142 F.3d 305, 309 (6th Cir.1998) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant can also seek the suppression of evidence by showing that the affiant deliberately or with reckless disregard for the truth made material omissions in the affidavit. *United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008); *United States v. Charles*, 213 F.3d 10, 23-24 (1st Cir. 2000); *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999); *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999); *United States v. Chalmers,* 1990 WL 66817*3 (6th Cir. 1990).

A material omission is one which, if it had been included in the affidavit, would negate the finding of probable cause. *Green*, 175 F.3d at 828; *Chalmers*, 1990 WL 66817*3.

Under the *Franks* procedure, a defendant must make a preliminary showing, usually by affidavit, that a material omission was made. *See Fowler*, 535 F.3d at 415, *Hill*, 142 F.3d at 310. If the defendant comes forward with a preliminary showing of an omission, then the court must consider whether probable cause would have been negated if the omission had been included in the search warrant affidavit. *Id.* If the answer to this last question is affirmative, then an evidentiary hearing is normally necessary to determine whether the alleged omission was, in fact, made intentionally or with reckless disregard for the truth. *Id.*

The Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement. Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Fowler*, 535 F.3d at 415-16 (internal citations omitted).

In the instant case, the defendant has made a *preliminary* showing that Det. Creel knew the victim had not sent photographs to the defendant and that Creel, with reckless disregard for the truth, did not include this information in his affidavit. The next issue to consider then is whether the omission is material, *i.e.*, if it had been included in the affidavit, would it have negated probable cause. *Fowler*, 535 F.3d at 415; *Green*, 175 F.3d at 828; *Chalmers*, 1990 WL 66817*3.

"In reviewing a state magistrate's determination of probable cause, this Court pays 'great deference' to a magistrate's findings, which 'should not be set aside unless arbitrarily

8

Case 1:12-cr-00092-HSM-CHS   Document 54   Filed 03/10/14   Page 8 of 16   PageID #: 225

exercised.'" *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . ." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983). A magistrate's probable cause determination should be made in "realistic and common sense fashion," and reviewed in the same manner. *Finch*, 998 F.2d at 351; *accord United States v. Hodge*, 714 F.3d 380, 384 (6th Cir. 2013).

"Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)(quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990); *accord Hodge*, 714 F.3d at 384. The Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983) adopted a "totality of the circumstances" test for determining whether an affidavit establishes probable cause for the issuance of a warrant. *Id.* at 230.

When including the omission at issue in this case in the search warrant affidavit, the affidavit would provide that defendant and the 13 year-old child victim exchanged sexually explicit and graphic messages via Facebook, that defendant sent email messages to the child requesting she perform sex acts and send nude photos of herself to him, but that the child did not send any photos to the defendant. Defendant argues that had the affidavit included the fact that no photos were sent, then the affidavit could not have supported probable cause to search for evidence of the crime of computer pornography as defined by Georgia statute, which, according to defendant, requires actual transmission of pornographic photographs involving minors– an act

9

that did not occur between the child victim and the defendant.[3] However, as I will discuss, the affidavit addressed other crimes of a sexual nature involving minors. First, however, I will address the child pornography issue.

The Court agrees that had Creel stated no pictures were sent, probable cause to find child pornography of the victim at issue in this case on any of defendant's electronic devices would have been completely lacking. That does not mean, however, that the affidavit did not set forth probable cause to believe evidence of child pornography involving *another child* would be found on the defendant's electronic devices. Defendant's communications with the minor indicated a general, prurient sexual interest in minors. Requests for nude pictures of the minor via the internet indicated that defendant likes visual sexual depictions of minors. Further, Creel in his affidavit stated that, based on his experience investigating child pornography, persons who seek this type of information "tend to retain this information for long periods of time, treating these items much like other valuable collectibles." (Creel Aff. Page ID # 166). This information would lead a magistrate to conclude there was a *fair probability* that evidence of child pornography involving *a child other than the victim in this case* would be found on defendant's computer and other electronic devices.

In addition, there are other, independent bases for probable cause involving crimes other than child pornography, as defined by Georgia statute, in Creel's affidavit. While Creel's

---

[3] It is my understanding that defendant is referring to Ga. Code Ann. § 16-6-4 which provides in relevant part:

(a) A person commits the offense of child molestation when such person:
   *  *  *
(2) By means of an electronic device transmits images of a person engaging in, inducing, or otherwise participating in any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

10

Case 1:12-cr-00092-HSM-CHS   Document 54   Filed 03/10/14   Page 10 of 16   PageID #: 227

affidavit stated police were looking for "Child Pornography," (*see* Creel Aff, Page ID # 11, ¶1), the affidavit also stated police were looking for

> [*a*]*ny electronic information or data, stored in any form, on any computer*, computer storage device or electronic media at this location which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent or automatically or manually initiated), of any computer or computer system including but *not limited to E-Mail, Immediate Messages,* Text Messages, photographic messages *or other communications made, sent, received or retained or used in violation of O.C.G.A., 16-12-100,* 16-6-4 and/*or 16-6-5*.

(Creel Aff. ¶7, Page ID # 12) (emphasis added).

Ga. Code Ann. § 16-6-5(a) provides:

> A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.

Creel's affidavit sets forth probable cause to believe there may be evidence of enticement, within the meaning of Section 16-6-5(a), on the defendant's computer.

Finally, the affidavit also sets forth probable cause to believe that evidence of a crime in violation of Ga. Code Ann. § 16-12-100.2(d)(1) and (e)(1) will be found on defendant's computer and/or other electronic devices. Ga. Code Ann. § 16-12-100.2 (d)(1) provides in relevant part:

> It shall be unlawful for any person intentionally or willfully to utilize a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, instant messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child, another person believed by such person to be a child, any person having custody or control of a child, or another person believed by such person to have custody or control of a child to commit any illegal act by, with, or against a child as described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy; Code <u>Section 16-6-4</u>, relating to the offense of child molestation or aggravated child molestation; Code <u>Section 16-6-5</u>, relating to the offense of enticing a child for indecent purposes; or Code Section 16-6-8, relating to the offense of public indecency, or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

Ga. Code Ann. §16-12-100.2(e)(1) provides

> A person commits the offense of obscene Internet contact with a child if he or she has contact with someone he or she knows to be a child or with someone he or she believes to be a child via a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, or instant messaging service, and the contact involves any matter containing explicit verbal descriptions or narrative accounts of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse that is intended to arouse or satisfy the sexual desire of either the child or the person, provided that no conviction shall be had for a violation of this subsection on the unsupported testimony of a child.

Creel's affidavit stated defendant, via Facebook, exchanged graphic sexual comments with the minor, asked the minor to engage in sexual acts, and asked the minor to send him pictures of those acts. Such conduct would be in violation of Section 16-12-100.2 (d)(1) and Section 16-12-100.2(e)(1).

The undersigned acknowledges that Creel's affidavit refers to Section 16-12-100, not Section 16-12-100.2. However, an evaluation of an affidavit to determine whether it sets forth probable cause requires a common sense approach. There is no doubt that defendant's alleged conduct as described by Det. Davis' Incident Report which was detailed in Det. Creel's affidavit constituted sexual exploitation of a minor. And, since the sexually explicit conversation between defendant and the minor occurred on Facebook, it was reasonable for the magistrate to conclude there was a fair probability that evidence of such would be found on defendant's computer and defendant's other electronic devices located in his home.

Furthermore, if it is technically significant that Creel referenced Section 16-12-100 instead of 16-12-100.2, then the undersigned concludes that, under the good faith exception, recitation of Section 16-12-100 instead of Section 16-12-100.2 does not rise to the level of police misconduct warranting suppression. *See Herring v. United* States, 555 U.S. 135 (2009).

12

For the reasons enumerated herein, I conclude the omission at issue in this case, *i.e.*, that no pictures were sent, does not negate probable cause to issue the search warrant, and, therefore, I also conclude a *Franks* hearing relating to this omission is not warranted.

B. Plaintiff's Arrest and Subsequent Statements at the Police Station

Defendant correctly argues that the half page Arrest Warrant Affidavit prepared by the Catoosa County magistrate and signed by Det. Davis is not, by itself, adequate to support probable cause to arrest the defendant because it lacks any factual allegations to conclude defendant had committed a crime.[4] However, based on Det. Tammy Davis' testimony at the February 25, 2014 evidentiary hearing, the undersigned concludes that when the Catoosa County, Georgia magistrate had Davis swear to the truth of the information she provided him, she was swearing to the truth of the information in her Incident Report and that Incident Report,

---

[4] Ga. Code. Ann. § 16-12-100.2(c)(1)-(c)(2) provides:

(c)(1) A person commits the offense of computer or electronic pornography if such person intentionally or willfully:

(A) Compiles, enters into, or transmits by computer or other electronic device;

(B) Makes, prints, publishes, or reproduces by other computer or other electronic device;

(C) Causes or allows to be entered into or transmitted by computer or other electronic device; or

(D) Buys, sells, receives, exchanges, or disseminates

any notice, statement, or advertisement, or any child's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of offering or soliciting sexual conduct of or with an identifiable child or the visual depiction of such conduct.

(2) Except as provided in paragraphs (3) and (4) of this subsection, any person convicted of violating paragraph (1) of this subsection shall be punished by a fine of not more than $10,000.00 and by imprisonment for not less than one nor more than 20 years.

13

as I explained in detail in the first part of this report and recommendation, adequately set forth probable cause to believe defendant had committed a crime in violation of Georgia law.

Defendant also argues that the application process for defendant's arrest warrant did not comport with Georgia state law, and, therefore, the arrest warrant was invalid requiring suppression of defendant's subsequent statements. Defendant argues Georgia law requires the bases for an arrest warrant to be set forth in writing in the warrant affidavit and even if Davis swore to the truth of her Incident Report to the magistrate, the Incident Report was not part of the Arrest Warrant Affidavit. Perhaps this imbroglio could have been avoided if the magistrate had expressly incorporated by reference into the Arrest Warrant Affidavit Det. Davis' Incident Report. Nevertheless, based on Det. Davis' testimony, the undersigned finds the magistrate had attached the Incident Report to the Arrest Warrant Affidavit when Det. Davis swore to it, thereby effectively incorporating the Incident Report into the Arrest Warrant Affidavit. More importantly, however, Georgia state law has no bearing on whether this arrest warrant comports with Fourth Amendment standards. *Virginia v. Moore*, 553 U.S. 164 (2008) (holding that whether evidence obtained in a search incident to arrest should be suppressed is determined under Fourth Amendment standards, not pursuant to state law as "it is not the province of the Fourth Amendment to enforce state law.") *See also United States v. Wright*, 16 F.3d 1429, 1436 (6th Cir. 1994) ("We hold that the appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment. The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended. This is so because the exclusionary rule is only concerned with deterring Constitutional violations.").

14

There is also another reason why defendant's arrest during the search of his residence on February 8, 2012 did not violate the Fourth Amendment. Det. Creel testified that had there been no Georgia arrest warrant for defendant, he would have arrested the defendant on gun charges when defendant arrived at his residence during the search on February 8, 2012. Det. Creel had probable cause to arrest defendant on gun charges because he knew defendant was a felon, defendant's wife told him the shotgun belonged to the defendant, and it is a violation of both state and federal law for felons to possess firearms. *See* Tenn. Code Ann. § 39-17-1307 and 18 U.S.C. § 922(g). Further, Creel was almost 100% sure that the length of defendant's shotgun was shorter than the legally required length in Tennessee and he was 100% sure that the length of the rifle found in defendant's bedroom was too short. *See* Tenn. Code Ann. § 39-17-1302.

Given these facts, the Sixth Circuit's decision in *United States v. Dede*, 83 Fed. Appx. 732 (6th Cir. Dec. 8, 2003) informs the undersigned's conclusion regarding the validity of defendant's arrest. In *Dede*, police approached defendant Jamual Moore, whom they suspected of drug trafficking, at the Cleveland, Ohio airport. During a consensual encounter, police asked for identification. The identification appeared fake: the card was flimsy and blurred, the type was misaligned, and the picture was crooked, but police did not arrest the defendant for false identification. Instead, defendant was detained for three hours while police pursued and obtained an arrest warrant on drug trafficking charges. The Sixth Circuit found the officers did not violate the Fourth Amendment by detaining defendant three hours before arresting him on the drug charges, regardless of the validity of the arrest warrant on drug charges, because police had probable cause at the time they detained him to arrest him for possessing false identification. *Id.* at 737 (*see also* cases cited therein.)

Similarly, because Creel had probable cause to arrest defendant on gun charges at the time he arrested the defendant pursuant to the Georgia warrant, there is no violation of the Fourth Amendment, even if a court were to ultimately conclude that the Georgia arrest warrant was invalid. Stated another way, that Det. Creel chose to officially make his arrest pursuant to the Georgia arrest warrant does not negate the probable cause Creel had (and knew he had) to arrest defendant on gun charges. I conclude defendant's arrest did not violate the Fourth Amendment and cannot provide the basis to suppress defendant's statements made on February 8, 2012 at the East Ridge police station.

## IV. Conclusion

For the reasons stated, the undersigned RECOMMENDS[5] that defendant's motion for a Franks hearing and to suppress evidence [Doc. 44] be DENIED.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).